**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02789-RMR-STV

ZACHARY MANCHAS,

Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
JOSEPH STEWART, in his individual capacity,
SELENA BIBIANA FAILE, in her individual capacity,
MIA SANCHEZ, in her individual capacity,
JASON SIMMONS, in his individual capacity,

Defendants.

---

**RESPONSE TO DEFENDANTS' MOTION TO BIFURCATE TRIAL AND STAY CERTAIN DISCOVERY [ECF #39}**

---

## 1. INTRODUCTION

Plaintiff Zachary Manchas, a veteran, was arrested, jailed, and criminally prosecuted simply because he protested and filmed the gun-point arrest of a person of color from a public sidewalk in downtown Denver, Colorado. This is far from the first time that Denver Police Department ("DPD") officers have retaliated against those who criticize and film them, and as it has in the past, Defendant City and County of Denver ("Denver") again failed to hold accountable the officers who blatantly violated the constitution. The Individual Defendants' (Defendants Stewart, Faile, Sanchez, and Simmons) conduct was also part of an extensive history of unconstitutional retaliation by Denver police officers against individuals who dare to criticize or record their actions. [ECF #45], ¶¶ 47-79. Over 40 years ago, the Supreme Court held that patterns and practices like Denver's underlie Congress's clear intent that "local

governments, like every other § 1983 'person,'…may be sued for constitutional deprivations visited pursuant to governmental 'custom'" if "the persistent and widespread discriminatory practices of [government] officials" are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). In requesting that this Court delay **<u>for years</u>** Plaintiff's legal right to obtain relief against Denver, a municipal Defendant who violated Plaintiff's constitutional rights, Defendants now seek to defy this principle that municipalities should be liable for constitutional violations.

Defendants ask this Court to bifurcate the case on the mere aspirational *possibility* that after discovery, dispositive motions, likely one or more interlocutory appeals, trial, and post-trial appeal, the Individual Defendants *might* be cleared of wrongdoing on Plaintiff's Section 1983 claims and, on that basis alone, to stay discovery indefinitely as to Denver. And, they seek to do so on multiple flawed bases. The first is that an Individual Defendant must be found liable for Denver to be held municipally liable. This is contrary to well-established Tenth Circuit caselaw that holds "[w]here the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable." C*rowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020); *see also Estate of McClain v. City of Aurora*, Civil Action No. 20-cv-02389-DDD-NRN, 2021 U.S. Dist. LEXIS 17099, at *7 (D. Colo. Jan. 29, 2021) (noting that "Defendants' contention that an underlying constitutional violation by one of the individual Defendants is required in order to impose municipal liability on [a municipality] is not an accurate reflection of the law").[1] The second is that the determination of probable cause is dispositive for all of Plaintiff's federal constitutional claims, which is not true for his First Amendment retaliation claim. *See* [ECF #33], pp. 9-11; *Nieves v.*

[1] Plaintiff's counsel sent the *McClain* decision to counsel for Defendants during the conferral process.

*Bartlett*, 139 S. Ct. 1715, 1727 (2019). Because of this, Defendants have failed to come close to meeting their burden of establishing the need for bifurcation. This case is neither different nor more suited for bifurcation than any of dozens of other civil rights lawsuits underway in this District that include municipal liability claims; to the contrary, the facts and posture of this case militate strongly *against* bifurcation. Historically, these cases have been perfectly capable of efficient and unified discovery and trials. That is the proper course here, too, and Defendants' motion should be denied.

## 2. LEGAL STANDARD REGARDING BIFURCATION

"[B]ifurcation is the exception, not the rule." *Engen v. Colo. Mills Mall L.P.*, 2010 U.S. Dist. LEXIS 150630, *2-3 (D. Colo. 2010). "The burden is on the [movant] to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Id*. Under Rule 42(b), the bifurcation decision "must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury." *York v. AT&T*, 95 F.3d 948, 957-58 (10th Cir. 1996). "[B]ifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993).

## 3. ARGUMENT REGARDING DEFENDANTS' ENTIRE MOTION

### 3.1 The caselaw from courts in this District supports denying Defendants' motion to bifurcate and stay.

Multiple decisions from this District support the denial of Defendants' motion. First, the case from this District that Defendants cite extensively contradicts their arguments. In *Talley v. City & Cty. of Denver*, Judge Kane bifurcated a case prior to trial. Civil Action No. 16-cv-02327-JLK, 2021 U.S. Dist. LEXIS 227379, at *8-9 (D. Colo. Jan. 29, 2021). In doing so, Judge Kane specifically stated that, had Denver requested bifurcation "at the outset of discovery[,]" he

"likely would not have granted bifurcation" but given that "discovery ha[d] been completed in this case, and [the plaintiff] had his opportunity to discover, and bring to light, evidence of governmental abuses" that bifurcation was appropriate. *Id.* Further, Judge Kane made sure that there would be "minimal delay from bifurcating the trial" by requiring that the parties "prepare for both trials simultaneously" and ensuring that both trials were "set in succession[.]" *Id.* In short, the case that Defendants rely on most heavily is inapposite to their position and this Court should rely on *Talley* in denying Defendants' motion.

Second, in *Estate of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, Judge Arguello considered a similar motion for bifurcation to the one filed by Defendants, and the case was in the same procedural posture as this case. Civil Action No. 20-cv-00991-CMA-KMT, 2021 U.S. Dist. LEXIS 1539, at *2 (D. Colo. Jan. 5, 2021). Judge Arguello rejected the same arguments made by Defendants while noting that bifurcating discovery in these types of cases "is uncommon in this jurisdiction," and reasoning that permitting bifurcation "would allow this case to languish on the Court's docket, potentially for years, and would be inconsistent with the Court's obligation to oversee 'the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (quoting Fed. R. Civ. P. 1). Judge Arguello also noted that bifurcating discovery would "merely substitute some discovery disputes for others," and that "generic arguments concerning the cost of discovery on Plaintiff's *Monell* claims would apply in any Section 1983 case involving individual and municipal liability claims." *Id.* Because of this, Judge Arguello found that bifurcating and staying discovery as to the municipal defendant would prejudice the plaintiff and, on this basis, denied the motion. *Id.*

Third, in a similar decision involving a case in a similar procedural posture to this one, Magistrate Judge Neureiter denied a motion to bifurcate and stay discovery as to the municipal

defendant. *Estate of McClain*, 2021 U.S. Dist. LEXIS 17099, at *5-8. Magistrate Judge Neureiter held that "bifurcating discovery would necessarily entail a lengthy delay in the case's resolution and therefore prejudice Plaintiffs and undermine the Court's ability to efficiently manage its docket" and "[b]ifurcation of discovery would also likely result in wasteful and unnecessary disputes regarding what discovery relates to the individual claims as opposed to the Monell claim." *Id.* Importantly, Magistrate Judge Neureiter rejected the same (flawed) argument made by Defendants here: that an underlying constitutional violation by one of the individual Defendants is required in order to impose municipal liability. *Id*. Magistrate Judge Neureiter found that this was a misstatement of the law in this Circuit and was not a basis for bifurcation or a stay as "the resolution of Plaintiffs' claims against the individual Defendants in the individual Defendants' favor does not necessarily foreclose a finding of municipal liability[.]" *Id.* (citing *Crowson*, 983 F.3d at 1191). Magistrate Judge Neureiter denied the motion for bifurcation on these grounds.

Finally, Judge Martinez has echoed the reasoning of Judge Arguello and Magistrate Judge Neureiter in multiple decisions. In fact, Judge Martinez held that "[b]ifurcation in [a case like this one], where there is close connection and overlap between the individual and entity liability claims, would be costly, waste time, and result in duplicative litigation" and that "bifurcation of discovery would also likely result in wasteful and unnecessary disputes regarding what discovery relates to the individual claims as opposed to the *Monell* claims[.]" *Parmar v. City of Aurora*, Civil Action No. 20-cv-2801-WJM-NRN, 2021 U.S. Dist. LEXIS 81136, at *5 (D. Colo. Apr. 28, 2021); *see also Valdez v. Motyka,* Civil Action No. 15-cv-0109-WJM-STV, 2020 U.S. Dist. LEXIS 122359, at *47 (D. Colo. July 13, 2020); *Rustgi v. Reams*, 536 F. Supp. 3d 802, 827 (D. Colo. 2021). This Court should follow the reasoning and holding of Judge

Arguello, Magistrate Judge Neureiter, and Judge Martinez, and deny Defendants' motion in its entirety.

4. **ARGUMENT REGARDING BIFURCATION**

4.1 **Bifurcation of discovery and trial would severely prejudice Plaintiffs.**

Defendants completely elide the obvious and massive prejudice that bifurcation would cause Plaintiff. *See* Douglas Colbert, *Bifurcation in Civil Rights Cases: Undermining Monell in Police Brutality Cases*, 44 HASTINGS L.J. 499, 503-09, 571-75 (1992-93). A potentially nearly decade-long, two trial court battle based on Plaintiff's arrest for simply criticizing and filming Defendants would be very prejudicial to Plaintiff. Moreover, plaintiffs, like Plaintiff, do not have the nearly inexhaustible resources required to undergo a years-long fight over the individual defendants' liability, and then to start yet another protracted fight, beginning with discovery, against the municipality; it is Denver that has those resources. *See id.* at 504.

Additionally, courts are wary of the "danger that bifurcation may deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere." *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 666-667 (S.D. Ohio 2004). This concern is particularly heightened in the civil rights context, because of the public interest in adjudicating municipal liability: "in practice [bifurcation] may only serve…to prevent the City from ever standing trial for any purported constitutional violation and from suffering a concomitant award of damages for its role in the cumulative malfeasance." *Id.*; *see also, e.g., Marcum v. Scioto Cty.*, 2012 U.S. Dist. LEXIS 93042, *8 (S.D. Ohio 2012). Civil rights plaintiffs have "a profound interest in pursuing [] claims with an eye toward institutional reform," and § 1983 exists to deter future violations as well as to provide compensation for

injuries as well. *Gomez v. Guevara*, 2019 U.S. Dist. LEXIS 155120, *13 (N.D. Ill. April 8, 2019). "[A] judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city." *Id.* "[I]f trial and discovery were routinely bifurcated to exclude or delay *Monell* claims, it would be almost impossible for litigants to ever discover, and bring to light, evidence of governmental abuses," including "policies and customs that may encourage unconstitutional abuses of power." *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013).

Bifurcation would "not only offend public policy; [it would] ignore settled civil rights law." Colbert, 44 HASTINGS L.J. at 505. Civil rights litigation has always been about more than the exchange of money from individual bad actors to those they have wronged. *See City of Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986). Moreover, "[f]oreclosing civil rights remedies for systemic police abuses…calls into question the essential legitimacy of the rule of law." Colbert, 44 HASTINGS L.J. at 505. Thus, to achieve the critical accountability and deterrence goals of Section1983, "[t]he City…must face the music with respect to the merits of the *Monell* claims." *Gomez*, 2019 U.S. Dist. LEXIS 155120, at *13.[2] Conversely, Defendants' proposed rule, namely that the number of previous instances where Denver has violated its citizens' constitutional rights weighs *in favor* of bifurcation, would create a perverse system where the *worst* actors are rewarded with bifurcation (and years-long delay), while those who have caused the violation of the constitution only a few occasions would face discovery, and litigation, on municipal claims.

"In the end, [D]efendant[s'] proposition would amount to no more than a complicated legal benediction," in contravention of "the time-honored premise that 'an unreasonable delay in

[2] Delaying determination of Denver's liability risks prolonging its customs and practices that cause constitutional violations. *See* Colbert, 44 HASTINGS L.J. at 505.

a case's resolution amounts to prejudice to the one opposing separation. [Such delay] [] is clearly not in the public interest.'" *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995) (citation omitted). "[A] private citizen is entitled to claim the timely protection of the law." *Sanchez v. Hartley*, 2016 U.S. Dist. LEXIS 185020, at *17-18 (D. Colo. Apr. 26, 2016) (citing *Marbury v. Madison*, 5 U.S. 137, (1803)). Because bifurcation of discovery and trial would cause Plaintiff undue prejudice, Defendants' motion must be denied on this ground alone. *See Angelo*, 11 F.3d at 964. "Rule 42(b) permits bifurcation to 'avoid prejudice,' not to create it." *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181 (3d Cir. 1981).

4.2 **Bifurcation would create burdens on the parties and this Court.**

"[T]he City's protestations of fairness for the individual officers might well be overstated," because the officers will defend their actions by insisting that they were following the custom, practice, policy, and/or training of Denver. *Owensby*, 385 F. Supp. 2d at 666. Therefore, "all of the evidence regarding the City's policies and training would be brought before the jury. If the second trial against the municipal Defendants were then necessary, the Court would be obligated to introduce this material before a jury twice." *Id.* Thus, "[i]t is difficult to see how [Defendants'] proposed arrangement, in practice, yields any benefit to judicial efficiency or resources." *Id.*

Moreover, "[b]ifurcation…may add unnecessary complexity and confusion to the discovery process…. If the [c]ourt were to grant the bifurcation motion, the need for the parties to separate *Monell* evidence from individual liability evidence may further complicate rather than simplify these proceedings." *Terry v. Cook County Dep't of Corr.*, 2010 U.S. Dist. LEXIS 68623, at *8-9 (N.D. Ill. July 8, 2010).[3] Bifurcation would almost certainly entail its own

[3] *See also Gomez*, 2019 U.S. Dist. LEXIS 155120, at *10-11; *Rockett v. Renth*, 2016 U.S. Dist. LEXIS 30177, at *9 (S.D. Ill. 2016); *Ott v. City of Milwaukee*, 2010 U.S. Dist. LEXIS 134572, at

burdens: parties will inevitably raise repeated disputes regarding whether any given discovery request addresses the claims against individual defendants or that against the municipality, burdening party and judicial resources. Courts have found that bifurcation "only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery." *Gomez*, 2019 U.S. Dist. LEXIS 155120, *10-11.

Further, there exists a real chance that the determination whether the Individual Defendants violated Plaintiff's constitutional rights will not occur until trial, or even after post-trial appeal, at which point the parties and the court will have expended significant time and resources much of which, if this Motion were granted, would need to be expended *again*, in whole, when discovery on the claims against Denver would start after the first trial. And, even then, Plaintiff's claims against Denver do not even depend upon the resolution of Plaintiffs' claims against the Individual Defendants as the Tenth Circuit has held that "the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights" *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1033-34 (10th Cir. 2020). Further, even if Plaintiff's claims are dismissed or summarily judged on the papers, the Court could do so based on the clearly established prong of qualified immunity, without reaching the question whether the defendant committed a constitutional violation, and such a qualified immunity determination would not protect Denver meaning that a dismissal of an individual defendant would not necessarily be dispositive of the litigation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This has happened before in one of undersigned counsel's cases where the Tenth Circuit held that an individual defendant was immune from suit,

*8-9 (E.D. Wis. 2010).

but the case continued against the municipality given the Tenth Circuit's ruling that the individual defendant violated the constitution and a ruling from the District Court that he had done so in accordance with the municipality's training. *See Surat v. Klamser*, 52 F.4th 1261, 1267 n.2 (10th Cir. 2022); *Surat v. Klamser*, No. 19-cv-0901-WJM-NRN, 2021 U.S. Dist. LEXIS 129950 (D. Colo. July 13, 2021).

Additionally, contrary to Defendants' arguments, Plaintiff's damages are not common to both claims. "Nominal damages under *Monell* remain as a remedy against the City if Plaintiff obtains compensatory damage awards against the Individual Defendants, no matter if the City has agreed to pay those damages." *Cruz v. Guevara*, No. 23 C 4268, 2023 U.S. Dist. LEXIS 229538, at *22 (N.D. Ill. Dec. 27, 2023). Defendants "in failing to grasp the availability of a nominal damages award" have not "accounted for the value a nominal *Monell* judgment may have for Plaintiff and his stated interest in changing what he says is a systemic pattern and practice of abusing" the rights of those who film and criticize DPD officers. *Id.* In other words, "a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality" because a judgement and nominal damages award against a municipality is sought to "encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue[.]" *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-19 (2d Cir. 1999). Thus, far from enhancing judicial efficiency, Defendants' proposal almost assures two full cases, rather than one, will be litigated in succession based on the same incident.

Finally, Defendants claim that Plaintiff's claim against the Individual Defendants is the "primary" claim and that, without bifurcation, there is a risk that the *Monell* claim subsumes it. [ECF #9]. Defendants completely misstate the purpose of this lawsuit. Plaintiff is a veteran who

is standing up for his rights in his city and seeks to change the customary violation of the constitution by DPD officers. That is why, in his request for relief, Plaintiff seeks substantive declaratory and injunctive relief. [ECF #45], pp. 46-47. This is not an isolated incident. It is one of over forty separate instances in the last five years of DPD officers flagrantly violating the Constitution by retaliating against individuals who film and criticize them. Plaintiff's lawsuit is aimed squarely at stopping these violations and holding Denver itself accountable for the violation of his rights. The primary claims in this lawsuit are the *Monell* claims, and the public interest militates in favor of Plaintiff being allowed to test his *Monell* claim in Court as soon as possible.

Ultimately, given the extra burdens caused by bifurcation, Defendants have failed to show that this Court's means of managing a case are insufficient to protect them from generalized fears of looming prejudice. Court after court has denied motions to bifurcate because the court can manage a discovery process and trial with the many tools available. *See, e.g., Martinez v. City of Oxnard*, 2005 U.S. Dist. LEXIS 32189, *16-17 (C.D. Cal. June 23, 2005) (denying bifurcation because defendants had not argued how limiting instructions and evidentiary rulings were insufficient to protect against any prejudice and concluding that defendants' assertion of jury confusion was "simply not legitimate").[4] This Court should follow this resounding consensus in the caselaw.

---

[4] *See also, e.g., Rosa v. Town of E. Hartford*, 2005 U.S. Dist. LEXIS 5302, at *13-14 (D. Conn. March 31, 2005) (concluding that "separate trials would not be efficient and would inconvenience the court, the jury, and the plaintiff," and that defendants' prejudice claims were "exaggerated" in light of available tools, such as "a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions."); *Rodriguez v. City of Chicago*, 429 F. Supp. 3d 537, 543 (N.D. Ill. December 17, 2019); *Smith v. City of Holyoke*, 2020 U.S. Dist. LEXIS 54860, *42 (D. Mass. March 30, 2020); *Marcum*, 2012 U.S. Dist. LEXIS 93042, *5-8; *D'Arrigo*, 2007 U.S. Dist. LEXIS 92520, *7-10; *Schinagel v. City of Albuquerque*, 2008 U.S. Dist. LEXIS 138526, *19-21 (D.N.M. 2008); *Saviour v. Kansas City*, 1992 U.S. Dist. LEXIS 8813, *30 (D. Kan. 1992).

4.3 **<u>Plaintiff's individual and municipal liability claims are not separable.</u>**

Courts have correctly recognized that individual liability constitutional claims and *Monell* claims like Plaintiff's are almost always intertwined. In 2019, for instance, the Third Circuit affirmed the denial of bifurcation, noting it "would have served no purpose because of the intertwining nature of the evidence of individual and municipal liability." *Stadler v. Abrams*, 785 Fed. Appx. 66, 68 (3d Cir. 2019). The court stressed that such intertwining "is frequently the case in claims of *Monell* liability where individual officers are sued for their individual conduct and a municipality's policy on that use of force becomes relevant." *Id.*; *see also, e.g., Valdez*, 2020 U.S. Dist. LEXIS 122359, at *47; *Ryan v. City of Salem*, 2017 U.S. Dist. LEXIS 85753, *4-5 (D. Or. June 5, 2017); *Owensby*, 385 F. Supp. 2d at 666. Here, not only would Denver's policies and training be relevant to the claims against the Individual Defendants *and* Denver, but so would Denver's and Denver officers' conduct *after* Plaintiff's arrest, including any investigation by Denver. The same witnesses that would testify as to Plaintiff's *Monell* claim and his Individual liability claim, including supervisors that were on-scene and reviewed the incident afterwards, the officers who stood by and failed to intervene as they watched the constitution being violated, and the Individual Defendants themselves who will testify as to the customs, practices, policies, and training of Denver. There is a substantial overlap in the evidence that will be necessary to prove the *Monell* claim and the Individual liability claim making the two claims inseparable.

4.4 **<u>Defendants' vague statements regarding prejudice fail to carry their burden.</u>**

Defendants provide no specific detail of how they would be so prejudiced that discovery and trial on Plaintiff's claim against Denver should be delayed for years. Courts have made clear that "the decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent

upon the costs and benefits of bifurcation under the unique circumstances of each case." *Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 49182, *35 (N.D. Ill. April 9, 2012). Courts have denied motions to bifurcate where, as here, defendants only provide "[h]yperbolic words used to characterize an unspecified burden." *Zencka v. Lake Cnty.*, 2016 U.S. Dist. LEXIS 67849, *12-13 (N.D. Ind. May 24, 2016). Further, to the extent there is any potential of prejudice to Defendants by trying the claims against Denver together with the claims against the Individual Defendants, it could be ameliorated by, among other things, standard discovery restrictions and proper jury instruction. *See id.* at *33-49. This stands in stark contrast with the *actual* prejudice that Plaintiff would face though years of delay, during which witnesses become unavailable, memories fade, and timely justice is denied.

In a case with a nearly identical procedural posture, another court thoroughly rejected bifurcation for these reasons, stating:

> [I]t is far too early to determine whether bifurcation is appropriate…. Ordering bifurcation at this incredibly-early stage of the case would be tantamount to establishing a bright-line rule that bifurcation is automatically appropriate in every Section 1983 case that includes both a claim against a governmental employee and a *Monell* claim against his or her employer. Defendant has referred [the court] to no case from any jurisdiction containing such a sweeping holding.

*Daniels*, 294 F.R.D. at 511-512. Defendants argue for exactly this "bright-line rule that bifurcation is automatically appropriate." *Id.* Defendants "present[] no unusual or special circumstances" that justify bifurcation, merely making a general argument that such bifurcation should be a matter of routine in all cases. *D'Arrigo v. Gloucester City*, 2007 U.S. Dist. LEXIS 92520, *10 (D.N.J. December 17, 2007). However, "[t]his practice is not permitted." *Id.* ("[A] routine order of bifurcation is a practice at odds with the requirement that discretion be exercised and seems to run counter to the intention of the rule drafters."). For these reasons, this Court should deny Defendants request to bifurcate

the claims against the Individual Defendants and Denver in this case.

5. **LEGAL STANDARD REGARDING MOTIONS TO STAY**

The Federal Rules of Civil Procedure do not provide for a stay of proceedings. *JTS Choice Enters. v. E.I. Dupont De Nemours & C.*, 2012 U.S. Dist. LEXIS 25858, at *2 (D. Colo. Feb. 29, 2012). Instead, Defendants must show good cause for the issuance of a protective order under Fed. R. Civ. P. 26(c): that such an order is necessary to protect them from annoyance, embarrassment, oppression, or undue burden or expense. Defendants "cannot sustain that burden by offering simply conclusory statements," but rather must support their request for a stay with a "particular and specific demonstration of fact." *Id.* (citation omitted). "The movant must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection." *Breckenridge v. Vargo & Janson, P.C.*, 2016 U.S. Dist. LEXIS 168543, at *3-4 (D. Colo. Nov. 28, 2016).

6. **ARGUMENT REGARDING DEFENDANTS' REQUEST FOR A STAY**

Defendants' request for a stay is premised wholly on their arguments for bifurcation. Should this Court determine that bifurcation is inappropriate, it should also deny Defendants' request for a stay. However, even if the Court does bifurcate this case, it should not stay discovery as to Plaintiff's *Monell* claims against Denver. "[S]tays are generally disfavored in this district." *JTS Choice Enters.*, 2012 U.S. Dist. LEXIS 25858, at *3. Defendants have not met their burden for showing there is good cause for a stay.

Although the Tenth Circuit has not prescribed such, courts in this District have reflexively applied the test outlined by Magistrate Judge Coan in *String Cheese Incident, LLC v. Stylus Shows, Inc.* ("*String Cheese*"), in determining whether to stay discovery. 2006 U.S. Dist. LEXIS 97388, at *4 (D. Colo. Mar. 30, 2006). The *String Cheese* test, which is not binding

precedent, requires Defendants to establish that the balance of the following five interests tips in their favor: (1) Plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to Plaintiff of a delay; (2) the burden on Defendants in going forward; (3) the convenience to the Court; (4) the interests of persons not parties to the litigation; and (5) the public interest. *Id.* at *4. The weight of these factors in the present case militates that discovery proceed. That result is even more apparent when the court includes in its analysis an important consideration that is crucial to determining whether there is "good cause" for a discovery stay under Fed. R. Civ. P. 26(c), but was not addressed in *String Cheese*: likelihood of success of the effort to dispose of the case by the Defendant seeking the stay.[5] A vast swath of jurisdictions[6]

---

[5] The benefits of the preliminary peek approach are that is that it "allows judges to refine their balancing in a way that allows them to minimize the risk of unnecessary costs and burdens in any particular case" when "discovery is unlikely to prove wasteful and any risk is outweighed by the harms associated with delay." Kevin J. Lynch, *When Staying Discovery Stays Justice: Analyzing Motions to Stay Discovery When a Motion to Dismiss is Pending*, 47 Wake Forest L. Rev. 71, 88 (2012).

[6] *See, e.g., Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988); *Feldman*, 176 F.R.D. at 652; *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000); *Ameris Bank v. Russack*, 2014 U.S. Dist. LEXIS 73460, 2014 WL 2465203 at *1 (S.D. Ga. 2014); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 U.S. Dist. LEXIS 80216, 2008 WL 4544470 at *1 (M.D. Ga. 2008); *Great W. Cas. Co. v. Firstfleet, Inc.*, No. CA 12-00623-KD-N, 2013 U.S. Dist. LEXIS 92465, at *5 (S.D. Ala. July 2, 2013); *DRK Photo v. McGraw-Hill Cos., Inc.*, No. CV 12-8093-PCT-PGR, 2012 U.S. Dist. LEXIS 168101, at *4 (D. Ariz. Nov. 27, 2012); *Ceglia v. Zuckerberg*, No. 10-CV-569A(F), 2012 U.S. Dist. LEXIS 85633, at *5 (W.D.N.Y. June 20, 2012); *Money v. Health*, No. 3:11-cv-00800-LRH-WGC, 2012 U.S. Dist. LEXIS 49922, at *14-15 (D. Nev. Apr. 9, 2012); *Mlejnecky v. Olympus Imaging America, Inc.*, No. 10-2630 2011 U.S. Dist. LEXIS 16128, 2011 WL 489743 at *6 (E.D. Cal. Feb. 7, 2011); *SP Frederica, LLC v. Glynn Cty.*, No. 2:15-cv-73, 2015 U.S. Dist. LEXIS 119310, at *7 (S.D. Ga. Sep. 8, 2015); *Suarez v. Beard*, No. 15-cv-05756-HSG, 2016 U.S. Dist. LEXIS 161222, at *3 (N.D. Cal. Nov. 21, 2016); *Bennett v. Fastenal Co.*, Civil Action No. 7:15-cv-00543, 2016 U.S. Dist. LEXIS 194431, at *2 (W.D. Va. Mar. 8, 2016); *Barber v. Remington Arms Co.*, No. CV 12-43-BU-DLC, 2012 U.S. Dist. LEXIS 146938, at *2 (D. Mont. Oct. 11, 2012); *United States ex rel. Jacobs v. CDS*, P.A., No. 4:14-cv-00301-BLW, 2015 U.S. Dist. LEXIS 117915, at *4 (D. Idaho Sep. 3, 2015); *Sams v. Ga W. Gate*, LLC, No. CV415-282, 2016 U.S. Dist. LEXIS 75974, at *15 (S.D. Ga. June 10, 2016); *MAO-MSO Recovery II, LLC v. USAA Cas. Ins. Co.*, No. 17-21289-Civ-WILLIAMS/TORRES, 2017 U.S. Dist. LEXIS 205650, at *7 (S.D. Fla. Dec. 14, 2017); *Minton v. Jenkins*, No. 5:10cv61/RH/EMT, 2011 U.S. Dist. LEXIS 55695, at *3 (N.D. Fla. May 24, 2011); *Heinzl v. Cracker Barrel Old Country Store, Inc.*, Civil

employ this "preliminary peek" approach, and this Court should follow these courts in holding that (prior to granting a discovery stay) the court should consider the likelihood of success of effort to dispose of the case by the Defendant seeking the stay. Courts in this District have previously adopted this approach previously and this Court should do so again. *Love v. Grashorn*, Civil Action No. 21-cv-02502-RM-NRN, 2022 U.S. Dist. LEXIS 93199, *8 (D. Colo. May 24, 2022).[7] In doing so, this Court would adopt an approach that better holds Defendants to their "burden of showing [immediate and clear possibility] and reasonableness." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).

### 6.1 **Applying the modified *String Cheese* factors confirms that discovery should proceed as to all Defendants.**

Considering the relevant interests involved and "[t]he strong presumption against stays," *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, Civil Action No. 10-cv-02593-WJM-KLM, 2012 U.S. Dist. LEXIS 704, *6 (D. Colo. Jan. 4, 2012), Defendants have not met their heavy burden to show "extreme circumstances" so as to justify a stay. *Robert W. Thomas & Anne McDonald Thomas Tr. v. First W. Tr. Bank*, Civil Action No. 11-cv-03333-WYD-KLM, 2012 U.S. Dist. LEXIS 114092, *6-7 (D. Colo. Aug. 14, 2012).

#### 6.1.1 **Plaintiff's interest in proceeding expeditiously militates in favor of allowing discovery to proceed.**

Plaintiff is substantially prejudiced by a stay because "the memories of the parties and other witnesses may fade with the passage of time, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Estate of Bailey v. City*

---

Action No. 2:14-cv-1455, 2015 U.S. Dist. LEXIS 132958, at *3 (W.D. Pa. Sep. 30, 2015).

[7] It is important to note that at least three courts in this District have utilized the preliminary peek framework without naming it as such. *See Waisanen v. Terracon Consultants, Inc.*, Civil Action No. 09-cv-01104-MSK-KMT, 2009 U.S. Dist. LEXIS 123427, at *3 (D. Colo. Dec. 22, 2009); *Sanaah v. Howell*, Civil Action No. 08-cv-02117-REB-KLM, 2009 U.S. Dist. LEXIS 35260, at *2 (D. Colo. Apr. 9, 2009).

*of Colo. Springs*, Civil Action No. 20-cv-1600-WJM-KMT, 2020 U.S. Dist. LEXIS 214552, *3 (D. Colo. Nov. 17, 2020). Granting Defendants' motion to stay the proceedings as to Plaintiff's *Monell* claims "could delay the proceedings for an unknown period of time until there is a ruling on [the motion to dismiss] and . . . the delay would significantly impact and prejudice [Plaintiff's] right to pursue [her] case and vindicate [her] claim[s] expeditiously." *String Cheese*, 2006 U.S. Dist. LEXIS 97388, at *6 (citation omitted). This Court should rely on the prejudice that would be inflicted upon Plaintiff by delay if a stay is granted and deny Defendants' motion. *See Estate of McClain*, 2021 U.S. Dist. LEXIS 17099, at *12.

6.1.2 **Allowing discovery to proceed does not unfairly burden Defendants.**

Defendants have shown no particularized facts that demonstrate they will suffer a clearly defined and serious harm associated with moving forward with discovery. "[W]here a movant seeks relief that would delay court proceedings by other litigants [it] must make a strong showing of necessity because the relief would severely affect the rights of others." *Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). "[A]bsent an extraordinary or unique burden imposed by the discovery at issue," courts often find that "on balance, a consideration of the first two *String Cheese* factors weigh against the imposition of a stay." *Wells v. Dish Network, LLC*, No. 11-cv-00269-CMA-KLM, 2011 U.S. Dist. LEXIS 66948, at *4 (D. Colo. June 22, 2011). Again, Defendants have not shown any "extraordinary or unique burden" supporting departure from that norm. *Id.* "The ordinary burdens with litigating a case do not constitute undue burden." *Lester v. Gene Express, Inc.*, Civil Action No. 09-cv-02648-REB-KLM, 2010 U.S. Dist. LEXIS 25379, *3 (D. Colo. Mar. 2, 2010). Ultimately, the concerns raised by Defendants, which are based solely on the fact that it has repeatedly and customarily violated citizens' constitutional rights and Plaintiff seeks

discovery as to these violations, are the type of "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, [that] do not satisfy the Rule 26(c) test." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008).[8] And, at best, "[t]he first two factors cancel each other out as any burden on Defendants is countered by Plaintiff's interest in proceeding with this litigation." *Bitco Gen. Ins. Corp. v. Genex Constr. LLC,* Civil Action No. 16-cv-1084-WJM-NYW, 2016 U.S. Dist. LEXIS 185941, at *4 (D. Colo. Sep. 13, 2016); *Yeiser v. DG Retail, LLC,* Civil Action No. 18-cv-0320-WJM-STV, 2019 U.S. Dist. LEXIS 129554 (D. Colo. Aug. 2, 2019); *JTS Choice Enters.*, 2012 U.S. Dist. LEXIS 25858, at *3.

#### 6.1.3 **Convenience to the Court, the public interest, and the interests of third parties are all served by allowing discovery to proceed.**

The "convenience to the Court weighs against granting the stay as cases that linger on the Court's docket are more difficult to manage." *Bitco Gen. Ins. Corp.*, 2016 U.S. Dist. LEXIS 185941, at *4; *Yeiser*, 2019 U.S. Dist. LEXIS 129554, at *15; *JTS Choice Enters.*, 2012 U.S. Dist. LEXIS 25858, at *3; *Estate of Bailey*, 2020 U.S. Dist. LEXIS 214552, at *4. Simply put, a stay is not an efficient use of judicial resources because of the impact it has on a court's management of its docket. *A.A. v. Martinez*, No. 12-cv-00732-WYD-KMT, 2012 WL 2872045, at *9-10 (D. Colo., July 12, 2012).

For similar reasons, a delay in court proceedings harms the public interest and the interests of other third parties who may be affected by this litigation. There is a "strong interest held by the public in general regarding the prompt and efficient handling of all litigation." *Lester*, 2010 U.S. Dist. LEXIS 25379, at *5. Delay is "of social concern" because it "is cost prohibitive and threatens the credibility of the justice system." *Chavez v. Young Am. Ins. Co.*,

---

[8] *See also Marks*, 2017 U.S. Dist. LEXIS 16234, at *7 (holding that the moving party "must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection").

No. 06-cv-02419-PSF-BNB, 2007 U.S. Dist. LEXIS 15054, *4-5 (D. Colo. Mar. 2, 2007).

> The relation between case disposition time and civil justice goals is straightforward. . . . . Delays in the resolution of civil disputes erode public confidence in the civil justice system, disappoint and frustrate those seeking compensation through the legal system, and generate benefits for those with the financial ability to withstand delays or otherwise benefit from them. Such factors, individually and collectively, undermine public faith and confidence in the ability of our civil justice system to operate efficiently and, more importantly, equitably.

Michael Heise Justice Delayed: *An Empirical Analysis of Civil Case Disposition Time*, 50 Cas. W. Res. L. Rev. 813, 814 (2000). Without confidence in our justice system, those who need the courts to vindicate their rights may not seek judicial remedies, thereby never receiving the relief to which they are entitled.

Other third-party individuals, as well as the public in general, plainly have a strong interest "in learning as soon as possible whether [Plaintiff's] allegations are true. *"V.S." v. Muhammad*, 2008 U.S. Dist. LEXIS 96099, at *10 (E.D.N.Y. Nov. 24, 2008). Resounding authority holds that "the public [has] an interest in assuring that institutions" such as Denver "[were] operating within the bounds of the law." *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 U.S. Dist. LEXIS 33935, at *12-13 (D. Colo. Mar. 12, 2013). In other words, the public has the right to know whether Denver is customarily violating citizens' constitutional rights. *See A.A.*, 2012 U.S. Dist. LEXIS 96447, at *14 ("[T]he public interest is well served by prompt and efficient handling of litigation, particularly where the litigation involves allegations against public officials."). Because Plaintiff's allegations "call into question . . . the competence and good faith" of public entities, the interests of third parties and the public in quickly discovering the veracity of Plaintiff's allegations weigh against granting a stay. *See "V.S."*, 2008 U.S. Dist. LEXIS 96099, at *10. And, Plaintiff seeks injunctive relief, in the form of policy changes and training, which further tilts this factor in his favor. *See Estate of Reat v. Rodriguez*,

No. 12-cv-02531-REB-MEH, 2013 U.S. Dist. LEXIS 14839, at *13 (D. Colo. Feb. 4, 2013) ("[A]ny delay in the prosecution of this case affects not only the parties, but all persons who may benefit from the proposed polic[y] changes Plaintiff hope[s] to accomplish.").

#### 6.1.4 **A preliminary peek reveals that Plaintiff's claims have merit.**

"In assessing the propriety of a stay, [the] court must consider: whether the movant is likely to prevail in the related proceeding [and] whether, absent a stay, any party will suffer substantial or irreparable harm." *Waisanen*, 2009 U.S. Dist. LEXIS 123427, at *4 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Without a preliminary showing that a defense is likely meritorious, any policy reasons for not subjecting Defendants to the burdens of discovery disappear. Looking at the merits of this case, Plaintiff has strong claims against Denver. Plaintiff was arrested and maliciously prosecuted for filming the police and criticizing them while filming, which clearly violates the Constitution. *See* [ECF #33], 1-13. Further, the operative Complaint outlines how Denver's customs, practices, policies, and training caused the violation of Plaintiff's constitutional rights, [ECF #9], and the combined response to Defendants' motions to dismiss demonstrates that the caselaw supports finding Denver liable in this case. *See* [ECF #33], 1-5, 16-25. Denver is a repeated bad actor that continually violates the constitutional rights of its citizens, and DPD officers face no consequences for doing so. This provides a strong basis for Plaintiff's claims. Given that the likelihood of success of Denver's effort to dispose of the case is low, the motion for stay must be denied.

## 7. **CONCLUSION**

Defendants' motion should be denied in its entirety.

Respectfully submitted this 16th day of February 2024.

NEWMAN | MCNULTY

*/s/ Andy McNulty*
Andy McNulty
1490 N. Lafayette Street
Suite 304
Denver, Colorado 80218
(720) 850-5770
amcnulty@kln-law.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all entered parties.

NEWMAN | MCNULTY

*s/ Andy McNulty*
Andy McNulty